IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ARTHUR BURCHETT,                    )
                                    )
        Plaintiff,                  )
                                    )      No. 03 C 1325
        v.                          )
                                    )      Judge Mark Filip
UNITED STATES POSTAL SERVICE        )
and CONRAD ALEXINSKI,               )
                                    )
        Defendants.                 )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Arthur Burchett ("Plaintiff" or "Mr. Burchett"), brings this action against his

former employer, John Potter, Postmaster General of the United States[1] (also "Defendant,"

---

[1] Plaintiff has named both the United States Postal Service (the "USPS") and Captain Conrad Alexinski as defendants. (D.E. 1.) However, as the Government correctly asserts, "the only proper defendant to a Title VII suit is the head of the agency accused of having discriminated against the plaintiff." (D.E. 36 at n.1 (citing 42 U.S.C. § 2000e-16(c) and *McGuinness v. USPS*, 744 F.2d 1318, 1322 (7th Cir. 1984).) *See also* 42 U.S.C. § 12117 (ADA incorporates by reference Title VII's "powers, remedies, and procedures."). Accordingly, and pursuant to the Government's request, the Court substitutes in the place of the USPS, John Potter, Postmaster General of the United States as the proper defendant. *See, e.g., Bavido v. Apfel*, 215 F.3d 743, 747 & n.3 (7th Cir. 2000) (substituting the government agency as the proper party defendant and finding that the government agency had waived any objection to this substitution where it had received proper notice of the action, did not dispute its designation as a defendant, and had fully defended the action from the beginning).

With regards to the other defendant in the case, Captain Conrad Alexinski, Plaintiff's ADA claims against him are improper because Captain Alexinski is not the head of the USPS. *See, e.g., McGuinness*, 744 F.2d at 1322. Moreover, precedent teaches that "individuals who do not otherwise meet the statutory definition of 'employer' cannot be liable under the ADA." *EEOC v. AIC Investigations, Ltd.*, 55 F.3d 1276, 1282 (7th Cir. 1995). The facts as presented indicate that Captain Alexinski had a supervisory role overseeing Plaintiff, rather than being his "employer." (*See* D.E. 43 ¶ 9; *id.*, Ex. 4 at 3 (listing Captain Alexinski's title as "Postal Police

1

"USPS," or "Government") under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1210, *et seq.* (D.E. 1 ("Complaint" or "Second Complaint").)[2] However, because federal employees cannot bring disability claims against their government employers under the ADA, the parties subsequently requested that this Court find jurisdiction over Mr. Burchett's claim by treating it as arising under the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.* (*See* D.E. 47 at 2 (Plaintiff articulating that "[t]he Rehabilitation Act is the counterpart to the Americans with Disabilities Act ('ADA') of 1990 for government agency defendants, and the standards set out in the ADA are used to determined whether the Rehabilitation Act has been violated.") (internal citation omitted); D.E. 48 at 2 (Government stating that complaints merely must "plead claims, not legal theories," and further asserting that jurisdiction is appropriate because "the Postal Service has always understood that [Mr.] Burchett's disability claim . . . [arises] under the Rehabilitation Act.") (internal quotation marks and citations omitted).)  In this regard, authority supports the idea of charitably reformulating Mr. Burchett's claim so that it is deemed as being advanced under the Rehabilitation Act; for the purposes of the disposition of this summary judgment motion, the Court will treat Mr. Burchett's claim as one under the Rehabilitation Act. *See* 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."); *accord, e.g., Arroyo v. Henderson*, No. 98 C 0443, 1999 WL 446700, at *1 (N.D. Ill. June 23, 1999) (describing how plaintiff/postal employee was previously granted leave to file an amended complaint that substituted the Rehabilitation Act for the ADA as basis for the claim).

---

Officer in Charge").)  Therefore, Captain Alexinski is dismissed from this action.

[2] The various docket entries in this case are designated "D.E. __."

The case is before the Court on the Government's motion for summary judgment. (D.E. 36.) The Government sets forth a number of independent procedural bases for granting summary judgment in its favor. (D.E. 37.) First, the Government states that Mr. Burchett cannot pursue his claim through both the Merit Systems Protection Board ("MSPB") process and the Equal Employment Opportunity ("EEO") process—from which this case stems. Second, the Government argues that Mr. Burchett's claim is barred by *res judicata* because it was subject to a final decision of the United States Court of Appeals for the Federal Circuit. Third, the Government asserts that Mr. Burchett waived his right to pursue the claim(s) at issue through the EEO process because of a settlement agreement into which he entered. In the alternative, the Government argues that, even if Mr. Burchett could pursue his claim through the EEO process, he inexcusably failed to timely file his first and second district court complaints. Moreover and independently, the Government argues that even if Mr. Burchett timely filed his first complaint, he inexcusably failed to timely file his second district court complaint. Finally, the Government argues that Mr. Burchett's arguments in the present matter are barred by *res judicata* because they should have been made when litigating his first district court case.

The Government has presented a number of colorable arguments as to why Mr. Burchett's claim is properly subject to dismissal. The Court will address at length only two independent bases below: (1) that Mr. Burchett waived the right to pursue the claim(s) at issue because of a settlement he entered into and his subsequent failure to fulfill the preconditions of that settlement; and (2) that Mr. Burchett's second and operative filing, in Case No. 03 C 1325, is untimely under the law. These two grounds adequately and independently justify dismissal of the suit, as explained below. As a result, the Government's summary judgment motion is granted.

3

## BACKGROUND[3]

### I. Factual Background, Proceedings Before the MSPB and Appeal to the Federal Circuit

Beginning in May 1974, Mr. Burchett was employed as a USPS police officer. (Pl. Resp. ¶ 1.) On January 24, 1995, the USPS sent a notice to Mr. Burchett that he was being placed on administrative leave, and that it intended to terminate his employment due to alleged attendance problems. (Pl. SAF, Ex. 3.) Mr. Burchett did not respond to this notice, and he was issued a discharge on February 16, 1995 ("Letter of Removal") for the reasons described in the USPS's earlier letter. (Pl. Resp. ¶ 3; Pl. SAF, Ex. 4.) The Letter of Removal notified Mr. Burchett that he had the right to appeal the removal decision to the MSPB. (Pl. SAF, Ex. 4 at 2.)

---

[3] The Court takes the relevant facts from Defendant's Rule 56.1(a) statement of facts and exhibits ("Def. SF") (D.E. 38); Plaintiff's Rule 56.1(b)(3) response ("Pl. Resp.") (D.E. 40); Plaintiff's statement of additional facts and exhibits thereto ("Pl. SAF") (D.E. 43); and Defendant's Rule 56.1(b)(3)(B) responses to Plaintiff's statement of additional facts ("Def. Resp."). (D.E. 45.) Where the parties disagree over relevant facts, the Court sets forth the competing versions. The Court resolves genuine factual disputes in the non-movant's favor. *See Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

Local Rule 56.1 ("L.R. 56.1") requires that statements of facts contain allegations of material fact, and the factual allegations must be supported by admissible record evidence. *See* L.R. 56.1; *Malec v. Sanford*, 191 F.R.D. 581, 583-85 (N.D. Ill. 2000). The Seventh Circuit teaches that a district court has broad discretion to require strict compliance with L.R. 56.1. *See, e.g., Koszola v. Bd. of Ed. of City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Curran v. Kwon*, 153 F.3d 481, 486 (7th Cir. 1998) (citing *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1316 (7th Cir. 1995) (collecting cases)). Where a party has offered a legal conclusion, or a statement of fact without offering proper evidentiary support, the Court does not consider that assertion. *See, e.g., Malec*, 191 F.R.D. at 583 ("[A] movant's 56.1(a) statement should contain only factual allegations. It is inappropriate to allege legal conclusions."); *id.* ("Factual allegations not properly supported by citation to the record are nullities."). Additionally, where a party improperly denied a statement of fact by failing to provide adequate or proper record support, the Court deems admitted the relevant statement of fact. *See* L.R. 56.1(a), L.R. 56.1(b)(3)(B); *Malec*, 191 F.R.D. at 584 (failure to adhere to L.R. 56.1 requirements, including citation to specific evidentiary materials justifying a denial, is equivalent to admission). The Court disregards any additional statements of fact contained in a party's response rather than in its statement of additional facts. *See Malec*, 191 F.R.D. at 584 (L.R. 56.1(b)(3)(B) statement is the only acceptable means of presenting additional facts to Court).

Thereafter, Mr. Burchett appealed his discharge to the MSPB. (Pl. Resp. ¶ 3.) In his

MSPB appeal, Mr. Burchett claimed that his discharge was discriminatory. (Def. SF ¶ 3.)[5] On

April 24, 1995, Mr. Burchett, along with his union representative, entered a "Firm Choice Last

Chance Settlement Agreement" ("Settlement Agreement") with USPS resolving his MSPB

appeal. (Pl. Resp. ¶ 4.) The Settlement Agreement provided in pertinent part that:

a. the parties understood the terms of the agreement and entered into its terms of their

own free will, without coercion, harassment, threats or intimidation;

b. Mr. Burchett agreed to pass a fitness for duty examination and a psychological

examination to determine if he could meet the requirements of his position;

c. Mr. Burchett agreed that if he was unable to pass the fitness for duty and/or the

psychological examination, the discharge would be effective; and

d. Mr. Burchett agreed that his MSPB appeal was withdrawn by the Settlement

Agreement. (*Id.*; Def. SF, Ex. 1.) He also agreed that "this resolves any pending or future appeal

through the Merit Systems Protection Board, EEO, Grievance/Arbitration, administrative, union

contract or judicial forum with respect to this removal action. The appellant know[s] and

understand[s] that he waives any further appeal rights to the Merit Systems Protection Board,

EEOC, judicial forum or under the applicable union contract with respect to this removal." (Def.

---

[5] Plaintiff claims that "[i]n that Plaintiff suffers from dementia and diabetes, he has no
clear recollection of what was stated in his appeal to the MSPB, and the defendants have not
offered a copy of the appeal to support this alleged fact and plaintiff's deposition testimony is
clear in that regard." (Pl. Resp. ¶ 3.) Neither party has produced a copy of Plaintiff's appeal
before the MSPB. However, in his October 2005 deposition, Plaintiff answered affirmatively to
the question that "you [Mr. Burchett] believe that you raised discrimination as an issue before the
MSPB, but you're unsure what exactly your claim of discrimination was?" (Def. SF, Citations to
Trans. of Oct. 20, 2005 Burchett Dep. at 13.) Therefore, the Court finds that Government has
introduced sufficient support for its statement of fact noted above.

SF, Ex. 1 at 3 (Settlement Agreement).) The Settlement Agreement delayed the effectiveness of Plaintiff's removal pending performance of the terms of the agreement. (*Id.* at 3-4.)

On June 20, 1995, Mr. Burchett was evaluated pursuant to the USPS's request and pursuant to the Settlement Agreement by a psychiatrist at the Isaac Ray Center, Dr. David E. Hartman, who determined that Mr. Burchett suffered from dementia and was unfit for duty. (Def. Resp. ¶ 5; *see also* Pl. SAF, Ex. 6.) Dr. Hartman recommended "complete neuropsychological testing as well as a dementia work-up conducted by a neurologist." (Pl. SAF, Ex. 6 at 5.)

There is evidence in the record, none of which is specifically controverted by Plaintiff, that throughout the period from 1992 to 1999, at a minimum, "all armed personnel of the [USPS] Inspection Service" in Chicago, to include Mr. Burchett, went "exclusively to the Isaac Ray Center for psychological-psychiatric evaluations." (Def. SF, Ex. 7 at 2.) As discussed below, Mr. Burchett contends, at least at some level within the framework permitted by Local Rule 56.1, that someone whom Mr. Burchett elected to see at the Veteran's Administration (the "V.A.") disagreed with the determination of the psychiatrist at the Isaac Ray Center that Mr. Burchett was unfit for duty as an armed officer because he was suffering from dementia. (Pl. Resp. ¶ 5.) Given the evidence in the record about the fact that the USPS exclusively used the Isaac Ray Center for all of its psychological-psychiatric work evaluations during the relevant time period, it is a fair question whether any reasonable jury could conclude that Plaintiff's implicit contention—that someone other than an Isaac Ray psychiatrist could diagnose Mr. Burchett's psychiatric-psychological competence to be an armed USPS police officer—is a plausible one. The Court need not resolve this issue—and can assume its resolution in Mr. Burchett's

favor—because of the other defects in Mr. Burchett's case warranting summary judgment in favor of the Government.[6]

In July 1995, Mr. Burchett attempted to return to work, but the USPS would not allow him to do so. (Pl. SAF ¶ 8; Def. Resp. ¶ 8.) The USPS informed Mr. Burchett that the statement from the V.A. would not be accepted and that only the diagnosis of the Isaac Ray Center would be followed. (*Id.*) Specifically, Captain Conrad Alexinski orally informed Plaintiff that USPS would only accept the opinion of the Isaac Ray Center's psychiatrist. (Plaintiff SAF ¶ 9; Def. Resp. ¶ 9.) In addition, Captain Alexinski informed Plaintiff by letter dated July 28, 1995 that he had been found unfit for duty, and that "[f]urther medical/neurologic examination(s) are required. As soon as the information is provided I will present you with detailed instructions concerning this evaluation." (Pl. SAF, Ex. 9.)

On July 21, 1995, Mr. Burchett petitioned the MSPB to enforce the Settlement Agreement ("Petition to Enforce"). (Plaintiff Resp. ¶ 6; Pl. SAF ¶ 12; Def. Resp. ¶ 12.) On

---

[6] Plaintiff contends—without appropriate support—that in July 1995, Dr. A.R. Doyle at a V.A. Hospital examined Mr. Burchett and found that Plaintiff was fit to return to work. (Pl. SAF, ¶ 7.) As the Government correctly argues, Mr. Burchett lacks appropriate factual foundation for such assertions. (*See* Def. Resp. ¶ 6 ("Both of the referenced exhibits [offered by Mr. Burchett] present inadmissible unsworn hearsay consisting of conclusory statements devoid of detailed factual support.").) The evaluations Plaintiff offers are unsworn, and he offers no other sworn testimony supporting them that is not derived from such hearsay; thus the assertions cannot be credited because they are based on unsworn and inadmissible evidence. *See, e.g.*, Fed. R. Civ. P. 56(e); *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 925 (7th Cir. 2001) (collecting authorities teaching that "[H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial."); *Wittmer v. Peters*, 87 F.3d 916, 917 (7th Cir. 1996) (citing Fed. R. Civ. P. 56(e) and stating that unsworn reports are not admissible for purposes of summary judgment); *Friedel v. City of Madison*, 832 F.2d 965, 969-71 (7th Cir. 1987) (discussing admissibility requirements in the summary judgment context). This deficiency in Plaintiff's filings ultimately is not material to the bottom-line result, because the parties agree that someone at the V.A. disagreed with the Isaac Ray diagnosis concerning Mr. Burchett's alleged dementia, and also because the two alternative bases for summary judgment in favor of the Government do not turn on the validity of the dementia diagnosis.

November 9, 1995, Mr. Burchett's Petition to Enforce was dismissed without prejudice by the ALJ based on a Memorandum of Understanding ("Memorandum of Understanding") that Mr. Burchett and his representative reached with the USPS. (Pl. Resp. ¶ 7.) The Memorandum of Understanding provided in pertinent part that:

a. the parties understood the terms of the agreement and that they entered into the terms of their own free will without coercion, harassment, threats or intimidation;

b. Mr. Burchett agreed to apply for disability retirement with the Office of Personnel Management ("OPM"), and the USPS agreed to provide support and administrative assistance for his application; and

c. Mr. Burchett could re-file his petition if the application for disability retirement was denied and the denial was upheld after appeal to the MSPB. (*Id.*; Def. SF, Ex. 2.)

When the parties reached this settlement, in November 1995, Administrative Judge Miksa issued his initial decision regarding compliance—in which he determined that the settlement reflected in the Memorandum of Understanding was lawful on its face, and that the parties freely entered into the agreement and understood its terms. (Pl. Resp. ¶ 8.) In light of these findings, Administrative Judge Miksa dismissed without prejudice the Petition to Enforce the Settlement Agreement pending adjudication of Mr. Burchett's disability retirement application by the OPM, and, if necessary, by the MSPB on appeal. (*Id.*) In his opinion, Administrative Judge Miksa, stated. *inter alia*, that if Mr. Burchett's "application is denied on appeal before the Board, the appellant [*i.e.*, Mr. Burchett] may refile the petition." (Def. SF, Ex. 3 at 1.)

On May 14, 1996, the OPM advised Mr. Burchett by letter that it could not grant his request for disability retirement because he did not provide sufficient materials to show that he

was qualified. (Pl. Resp. ¶ 9; *see also* Pl. SAF, Ex. 16 at 2 ("OPM Disallowance Letter").) Mr. Burchett contends that the USPS did nothing to support or assist him with his application for disability retirement benefits, even though the USPS had knowledge that OPM had denied his application. (Pl. SAF ¶ 16.)[7]

Mr. Burchett did not appeal to the MSPB following the OPM's disallowance of disability benefits. Instead, on June 13, 1996, Mr. Burchett, through his attorney Robert D. Whitfield, refiled his Petition to Enforce the Settlement Agreement. (Pl. Resp. ¶ 10.) Administrative Judge Miksa issued a second decision regarding compliance on October 30, 1996, in which he determined, among other things, that: 1) the USPS moved to dismiss the appeal as premature because there was no evidence that Mr. Burchett had appealed OPM's denial of his disability retirement to the MSPB as expressly required by the parties' Memorandum of Understanding; 2) Mr. Burchett did not file a response to the USPS's motion, despite being specifically provided with an opportunity to respond; and 3) Administrative Judge Miksa was taking official notice that the MSPB had no record of an appeal of an OPM denial of Mr. Burchett's disability retirement application. (*Id.* ¶ 11.) Administrative Judge Miksa found that Mr. Burchett failed to demonstrate that he fulfilled a necessary precondition to refiling his enforcement petition—*i.e.*, an appeal to the MSPB of any denial of Mr. Burchett's disability retirement application—and accordingly dismissed the petition as premature. (*Id.*; *see also* Def. SF, Ex. 5 at 3 (October 30, 1996 ALJ decision stating that, "[i]n the Initial Decision that approved the parties' November 8, 1996 [sic] Memorandum of Understanding, the appellant [*i.e.*, Mr. Burchett] was advised: The petition for enforcement is DISMISSED without prejudice to his right to refile the petition only

---

[7] The Government denies the statement by Mr. Burchett that USPS did nothing to support or assist him in applying for disability retirement benefits. (Def. Resp. ¶ 16.)

in the event that his disability retirement application is denied by OPM <u>and on appeal, by the</u> <u>Merit Systems Protection Board</u>.") (underlining in October 30, 1996 ALJ decision).)

Accordingly, the ALJ found "that the appellant has not demonstrated that he has fulfilled a necessary pre-condition to refiling his enforcement petition, and the petition must be DISMISSED without prejudice as premature." (*Id.*, Ex. 5 at 4.) The Certificate of Service attached to the decision certified that the decision was mailed to both Mr. Burchett and Mr. Whitfield, his attorney. (*Id.* at 7.)

On May 1, 1997, a three-member panel of the MSPB summarily denied a petition for review of the October 30, 1996 Decision to dismiss without prejudice as premature Mr. Burchett's renewed Petition to Enforce the Settlement Agreement. (Pl. Resp. ¶ 12.) The denial noted that this was the MSPB's final order in the appeal, and that any further appeal had to be taken to the United States Court of Appeals for the Federal Circuit within thirty days of receipt of the denial by Mr. Burchett or his attorney. (*Id.*)

In May 1997, Mr. Burchett received a letter dated May 13, 1997 from Maxine Moore, a Human Resources Specialist with the USPS, notifying him that his employment was terminated effective May 1, 1997. (Pl. SF ¶ 18; Def. Resp. ¶ 18.) Ms. Moore also indicated that Mr. Burchett had "30 days to appeal to the U.S. Court of Appeals." (Pl. SAF, Ex. 16.)

On or about June 4, 1997, Mr. Whitfield filed a Request for Review of the MSPB's May 1, 1997 order with the Federal Circuit. (Pl. Resp. ¶ 14.) The Federal Circuit dismissed Mr. Burchett's petition for review for failure to prosecute on September 5, 1997, because his supporting brief was not timely filed. (*Id.* ¶ 15; *see* Def. SF, Ex. 9 (*Burchett v. USPS*, 124 F.3d 228, 1997 WL 575847, *1 (Fed. Cir. Sept. 5, 1997) (unpublished order) ("The petitioner having

10

failed to file the brief required by Federal Circuit Rule 31(a) within the time permitted by the rules, it is ORDERED that the petition for review be, and same hereby is, DISMISSED, for failure to prosecute in accordance with the rules.")).)

II. Proceedings Before the EEO and EEOC-OFO

In parallel with the proceedings before the MSPB and the Federal Circuit, on May 11, 1997, Mr. Burchett contacted the USPS's EEO department, alleging that his January 1995 discharge was discriminatory. (Pl. Resp. ¶ 13.) Mr. Burchett then filed a formal EEO complaint on October 8, 1997, in which he contended that he was discriminated against on the bases of his race (African-American) and mental disability (dementia) when he was removed from the position of Postal Police Officer. (*Id.* ¶ 16; *see also* Def. SF, Ex. 7 at 1 (USPS EEO decision stating that Mr. Burchett "alleged he was discriminated against on the bases of race (Black) and mental disability (Dementia) when he was removed from the position of Postal Police Officer . . . ."); Pl. SAF, Ex. 17 at 1 (letter from EEOC appeals officer noting that issue under review was alleged discrimination on the basis of race and disability in connection with Mr. Burchett's removal from the position of Postal Police Officer).)

On December 3, 1999, the USPS issued a final agency decision ("Final Agency Decision") dismissing Mr. Burchett's October 8, 1997 EEO complaint "in accordance with 29 C.F.R. § 1614.107(d) in that the issue of [Burchett's] removal was raised in an appeal to the [MSPB] for which the MSPB retained jurisdiction." (Pl. Resp. ¶ 17 (quoting Def. SF, Ex. 7 at 2).) The Final Agency Decision quoted 29 C.F.R. § 1614.107(d)—"EEOC complaint processing regulations, specifically 29 C.F.R. § 1614.107(d), state that the Agency shall dismiss a complaint: 'Where the complainant has raised the matter in a negotiated grievance procedure that

11

permits allegations of discrimination or in an appeal to the Merit Systems Protection Board and § 1614.301 or § 1614.302 indicates that the complainant has elected to pursue the non-EEO process.'" (Def. SF, Ex. 7 (Final Agency Decision at 1 (quoting 29 C.F.R. § 1614.107(d))).) The Final Agency Decision noted that in the Settlement Agreement, Mr. Burchett and his representative agreed "to the terms of the settlement agreement" and agreed to, *inter alia*, waive "any further appeal rights to . . . the EEOC, judicial forum, or under the applicable union contract with respect to this removal." (*Id.* at 1-2 (quoting the Settlement Agreement).) The Final Agency Decision stated that: "[c]learly, complainant cannot at this time initiate, or seek redress through, the EEO complaint process on his removal." (*Id.* at 2.) The Final Agency Decision was sent to Mr. Burchett and Mr. Whitfield by certified mail-return receipt. (Pl. Resp. ¶ 17.) Mr. Burchett signed for the Final Agency Decision on December 7, 1999. (*Id.*)

Mr. Burchett timely appealed the Final Agency Decision to the EEOC Office of Federal Operations ("EEOC-OFO"). (*Id.* ¶ 18.) The EEOC-OFO noted that Mr. Burchett was contending that he was discriminated against in his removal from the position of Postal Police Officer "on the bases of Race (Black) and Disability (Regarded as) . . . ." (Def. SF, Ex. 10 (EEOC decision) at 1.) On July 25, 2001, the EEOC-OFO issued a decision in which it reviewed the course of proceedings, found that the MSPB Settlement Agreement barred Mr. Burchett from raising his discharge with the EEO, and accordingly affirmed the USPS's decision to dismiss the EEO complaint. (Pl. Resp. ¶ 18.) The EEOC-OFO noted that the Settlement Agreement waived any further appeal rights to, *inter alia*, the EEOC or other judicial forum. (Def. SF, Ex. 10 at 2.) The EEOC-OFO also found that Mr. Burchett's waiver was valid and therefore would be upheld. (*Id.* at 3.)

On August 15, 2001, Mr. Burchett sent a letter to the EEOC-OFO that it deemed a request for reconsideration of its July 2001 decision. (Pl. Resp. ¶ 19.) On January 23, 2002, the EEOC-OFO Acting Manager of EEO Compliance and Appeals sent a letter to the EEOC-OFO Compliance and Control Division recommending that it deny Burchett's request for reconsideration. (*Id.* ¶ 20.) The letter was sent to Mr. Burchett by certified mail-return receipt. (*Id.*) Mr. Burchett signed for the letter on January 30, 2002. (*Id.*)

On February 13, 2002, the EEOC-OFO denied Mr. Burchett's request for reconsideration of its July 2001 decision (the "February 13, 2002 Decision"), finding that "the previous decision properly affirmed the agency's decision finding that the complainant had raised the matter in an appeal to the MSPB and his claim was resolved by a settlement pursuant to that proceeding." (*Id.* ¶ 21 (quoting Def. SF, Ex. 11 at 3).) In addition, the February 13, 2002 Decision advised that there was no further right of administrative appeal and that a civil action in district court could be brought within ninety days of receipt of the decision. (*Id.*) There was a Certificate of Mailing attached to the February 13, 2002 Decision, in which an EEO assistant stated that the Decision was mailed to Mr. Burchett.[8] (*Id.*)

Mr. Burchett contends that he never received the February 13, 2002 Decision. (*Id.* ¶ 22.) The Government has argued, through uncontroverted circumstantial evidence, that this contention is not to be credited. For example, it is undisputed that since 1979, Mr. Burchett's

---

[8] Mr. Burchett states that "Plaintiff disagrees that a copy of the [February 13, 2002] decision was mailed to, or received by, him." (Pl. Resp. ¶ 21.) The Government has produced evidence, namely the Certificate of Mailing, as support for its contention that the February 13, 2002 Decision was mailed to Mr. Burchett. (*See* Def. SF, Ex. 11 at 4.) As will be discussed in detail below, the Certificate of Mailing does not indicate which address the Decision was mailed to, nor does it suggest that the Decision was sent by any mail service that tracks receipt. Therefore, the Court finds that the Government has produced only enough evidence to support the statement of fact in Def. SF ¶ 21 as articulated above.

sole residence has been 6540 South Peoria Street, Chicago, IL 60621. (*Id.* ¶ 23.) At all times relevant to this action, Mr. Burchett received all of his mail at his residential address, did not maintain any other address, and did not maintain a post office box. (*Id.*) Moreover, Mr. Burchett testified that in February 2002, he did not take any vacations and was not under any type of physical or mental incapacity. (*Id.*)

At some point between February and September 2002, Mr. Burchett wrote a letter to the EEOC inquiring about the status of his case. (*Id.* ¶ 24.) On September 23, 2002, the EEOC-OFO responded by letter to Mr. Burchett's inquiry (the "September 23, 2002 Letter"). (*Id.* ¶ 25.) The September 23, 2002 Letter advised Mr. Burchett that: 1) the EEOC would not provide him with any further relief; 2) he had the right to file a suit in district court; 3) the 90-day limitation period for bringing suit commenced on the date he received the February 13, 2002 Decision; 4) there were various procedural requirements he had to follow to bring suit; and 5) he could obtain information from various sources to assist in his district court filing. (*Id.*; Def. SF, Ex. 13 (September 23, 2002 Letter).) Mr. Burchett has testified that he received the September 23, 2002 Letter. (Pl. Resp. ¶ 27.)

In pleadings previously filed in this case, Mr. Burchett has represented to the Court that the September 23, 2002 Letter "in its overall tenor and tense informed plaintiff of: (1) a right to file suit within 90 days; (2) where to file suit; (3) how to get legal representation; and (4) some procedural points to filing suit." (*Id.* ¶ 26 (quoting D.E. 14 at 2).) Mr. Burchett also represented that he "regarded that letter as his 'right to sue letter,' and acted in accordance with that belief by filing suit within 90 days from the date of the letter." (*Id.* (quoting D.E. 14 at 3); *see also* Def. SF, Burchett Dep. at 53 (Mr. Burchett testifying that he received a September 2002 letter from

14

the EEOC "saying that I had the right to sue . . . .").) In addition, Mr. Burchett represented that in November 2002 he told Mr. Dwight LeVert—who is presently his attorney and who previously advised and assisted him, as discussed elsewhere—that he received a right to sue letter from the EEOC; at that time, Mr. LeVert advised Mr. Burchett of the elements of a disability discrimination claim and the filing deadline for bringing suit on such a claim. (Pl. Resp. ¶ 26 (citing D.E. 25 at 7 n.1).)

III. Procedural History Before the District Court In The Northern District Of Illinois

On December 13, 2002, Mr. Burchett filed a *pro se* ADA discrimination complaint (the "First Complaint") in the United States District Court for the Northern District of Illinois, Case Number 02 C 9070, which was assigned to Chief Judge Kocoras. (*Id.* ¶ 28.) In the First Complaint, Mr. Burchett represented that he received a Notice of Right to Sue from the EEOC on September 23, 2002, and he attached a copy of the September 23, 2002 Letter to his complaint. (Def. SF, Ex. 14 at 10.) The First Complaint challenged Mr. Burchett's termination and sought reinstatement and back pay. (*Id.* at 3, 4-5.) By final judgment entered December 27, 2002, Chief Judge Kocoras *sua sponte* dismissed Mr. Burchett's complaint without prejudice because its allegations revealed that he was only complaining about being fired due to a personality conflict rather than any disability discrimination. (Pl. Resp. ¶ 29; *see also* Def. SF, Ex. 15 (including D.E. 5 in Case No. 02 C 9070).) Mr. Burchett did not appeal Chief Judge Kocoras's final judgment. (Pl. Resp. ¶ 30.)

In January or February of 2003, Mr. Burchett asked Mr. LeVert about the judgment in Case No. 02 C 9070. (*Id.* ¶ 31.) Mr. LeVert reviewed the judgment and advised Mr. Burchett to file a "Motion to Vacate the Final Judgement and for Leave to File an Amended Complaint," in

which any reference to a personality conflict was removed. (*Id.*) Mr. Burchett did not heed this advice: instead of filing a motion before Chief Judge Kocoras, he filed a second complaint on February 21, 2003 (the "Second Complaint"), nearly two months after Chief Judge Kocoras issued his judgment. (*Id.* ¶ 32; *see also* Def. SF, Burchett Dep. at 56 (reflecting Mr. Burchett's concession that attorney LeVert advised him to file "a motion to vacate Judge Kocoras's judgment rather than to file a new complaint . . . .").) The Second Complaint was given Case Number 03 C 1325 and was assigned to Judge Leinenweber. (Pl. Resp. ¶ 32.) Mr. Burchett contends that he did not intend for the Second Complaint to commence a new suit; rather, he intended it as an amendment to the First Complaint. (*Id.* ¶ 33.)

On March 18, 2003, Judge Leinenweber dismissed the Second Complaint *sua sponte* for Mr. Burchett's failure to file it within the applicable 90-day statute of limitations and for his failure to timely seek EEO counseling. (*Id.* ¶ 36.) At some point after the dismissal of the Second Complaint, Mr. Burchett spoke with attorney LeVert, who again advised him to file a motion to vacate the judgment and for leave to amend in Case No. 02 C 9070. (*Id.* ¶ 37.) Mr. LeVert also advised Mr. Burchett to file a motion to reconsider and vacate in Case No. 03 C 1325. (*Id.*) A month or so after this conversation, Mr. Burchett asked Mr. LeVert to assist him in preparing these motions. (*Id.* ¶ 38.) Mr. LeVert agreed and after reviewing documents and obtaining facts from Mr. Burchett, he prepared both "Plaintiff's Motion to Reinstate Complaint and to File an Amended Complaint Immediately" brought before Judge Kocoras, and "Plaintiff's Motion to Reconsider and Vacate Judgment" brought before Judge Leinenweber. (*Id.*)

As discussed further below, during this period of time, none of Mr. Burchett's filings, including the motions prepared by Mr. LeVert discussed immediately above, acknowledged the

16

involvement of attorney LeVert. Instead, as discussed further below, the motions were denominated as *pro se* filings and, at least at times, expressly sought more lenient treatment for Mr. Burchett on such basis, notwithstanding that at least some of the filings were prepared by counsel. The Court will read the underlying record about this subject most charitably to Mr. LeVert and Mr. Burchett, and will assume that Mr. Burchett sought Mr. LeVert's assistance; that Mr. LeVert tried to assist Mr. Burchett as best he could but likely was too busy or perhaps uninterested in taking on Mr. Burchett's case full-time, and therefore Mr. LeVert never entered his appearance in the case because he viewed himself as doing an informal favor for Mr. Burchett as opposed to functioning as his full-fledged counsel.

Nonetheless, the Court is, with all respect, concerned about any practice of an attorney writing filings for a supposed *pro se* litigant that: (1) represent that the litigant is proceeding *pro se*; and (2) expressly seek more generous treatment on such basis. While the law affords more generous treatment to *pro se* litigants, that latitude is designed to compensate for the absence of attorney involvement. If attorney involvement is present, then the more generous treatment would be unwarranted, as a court seemingly has no license in precedent to treat equally-represented parties in an uneven manner. In addition, affording more generous treatment to one side necessarily tends to expose the other side, at least at some level, to a corresponding disadvantage, as that other side gets no special leniency. If Mr. Burchett was functionally represented at a given time, or in connection with certain filings, then the Government (and, by extension, the citizens and public fisc the Government represents) would not appear to be fairly

17

subject to any finger-on-the-scale against it in terms of more generous treatment for Mr. Burchett as a putative *pro se* litigant.[9]

In any event, both "Plaintiff's Motion to Reinstate Complaint and to File an Amended Complaint Immediately," which was brought before Chief Judge Kocoras, and "Plaintiff's Motion to Reconsider and Vacate Judgment," which was brought before Judge Leinenweber, were filed on April 25, 2003. Both motions represented that a) Mr. Burchett was proceeding *pro se*, b) the September 23, 2002 EEOC-OFO letter was Mr. Burchett's right to sue letter, and c) the Second Complaint was an attempt to amend Mr. Burchett's First Complaint. (Pl. Resp. ¶ 38.)

The motion before Judge Leinenweber represented that, "[b]eing a layperson, the plaintiff was not familiar with the procedure for filing his amended complaint." (*Id.* ¶ 39 (quoting Def. SF, Ex. 18 ¶ 7; *but see* Pl. Resp. ¶ 31 (Plaintiff's acknowledgment that, after Chief Judge Kocoras issued his final judgment, "[a]ttorney LeVert reviewed the judgement and advised [Mr.] Burchett to file a 'Motion to Vacate the Final Judgement and for Leave to File an Amended Complaint' removing any reference to a personality conflict."); Def. SF, Burchett Dep. at 56 (same).) The motion was silent as to Mr. LeVert's prior advice and assistance to Mr. Burchett, and also silent as to the fact that an attorney prepared the motion. (Pl. Resp. ¶ 39.) The motion before Chief Judge Kocoras represented that, "due to his [*i.e.*, Mr. Burchett's] lack of knowledge regarding the rules of civil procedure, the plaintiff had not sought leave of court before attempting to file the amended complaint" and "[b]eing a layperson, the plaintiff was not familiar

---

[9] Again, the Court assumes the best about the underlying situation, and that Mr. Burchett was seeking attorney LeVert's advice and attorney LeVert was simply trying to be a nice person. The Court is not critical in the sense that "no good deed should go unpunished"; however, the Court does have concerns about the propriety of filing "*pro se*" documents seeking more generous treatment for a litigant when those documents, in fact, have been prepared by counsel.

with the procedure for filing his amended complaint, and the court should view the facts surrounding plaintiff's procedural errors liberally so as to do substantial justice and equity with regard to plaintiff's rights." (*Id.* ¶ 40 (quoting Def. Ex. 19 ¶¶ 4, 9; *but see* Pl. Resp. ¶ 31 (Plaintiff's acknowledgment that after Chief Judge Kocoras issued his final judgment, "[a]ttorney LeVert reviewed the judgement and advised Burchett to file a 'Motion to Vacate the Final Judgement and for Leave to File an Amended Complaint' removing any reference to a personality conflict."); Def. SF, Burchett Dep. at 56 (same).) As with the motion filed before Judge Leinenweber, this motion was silent as to attorney LeVert's prior advice and assistance, and to the fact that an attorney had prepared the motion. (Pl. Resp. ¶ 40.)

On May 9, 2003, Chief Judge Kocoras denied Mr. Burchett's motion to reinstate the First Complaint and to file an amended complaint. (*Id.* ¶ 41.) Mr. Burchett did not appeal this order. (*Id.*) On September 11, 2003, Judge Leinenweber granted the motion to reconsider and vacated his earlier judgment based on the contention that Mr. Burchett was trying to amend the First Complaint before Chief Judge Kocoras. (*Id.* ¶ 42.) Judge Leinenweber also referred Case No. 03 C 1325 to the Executive Committee, where it was reassigned to Chief Judge Kocoras. (*Id.* ¶ 43.)

The USPS then moved to dismiss Case No. 03 C 1325 because Mr. Burchett did not file his complaint until ten months after the February 13, 2002 Decision, which was well beyond the applicable 90-day statute of limitations. (*Id.*) In response to USPS's motion, Mr. Burchett argued that: 1) he never received the February 13, 2002 Decision; 2) he filed suit because he thought the EEOC-OFO's September 23, 2002 Letter was his right to sue letter; and 3) the 90-day statute of limitations never started running because the September 23, 2002 Letter was not a right to sue letter. (*Id.* ¶ 44.) Although Mr. Burchett filed his response "*pro se*," attorney LeVert

19

actually prepared the response. (*Id.*) In reply, the USPS argued that, even accepting as true Mr. Burchett's contention that he did not receive the February 13, 2002 Decision, the Second Complaint, namely the operative complaint in Case No. 03 C 1325, was still untimely. (*Id.* ¶ 45.)

Case No. 03 C 1325 was reassigned to this Court upon taking the bench in March 2004. (*Id.* ¶ 46.) In an order dated July 16, 2004, this Court invited Mr. Burchett to file a brief explaining why his complaint should not be dismissed for his failure to timely contact the EEOC. (*Id.* (citing D.E. 19).) In response, Mr. Burchett argued that he was not formally fired from his job at USPS until shortly before he contacted the EEO, or, in the alternative, that the "continuing violation" doctrine rendered his complaints timely. (*Id.* ¶ 47.) Once again, although Mr. Burchett filed his response "*pro se*," attorney LeVert actually prepared the response. (*Id.*)

During the course of a series of hearings, the Court asked Mr. Burchett to ask Mr. LeVert to attend a forthcoming status conference. (*Id.* ¶ 48.)[10] At a November 15, 2004 hearing, Mr. LeVert entered a formal appearance in this case, and the Court permitted the Government to file a second motion to dismiss. (*Id.*) After full briefing on the second motion to dismiss, the Court denied the motion without prejudice because the Court could not rule without looking to facts that were outside the pleadings. (*Id.*) The Court then permitted structured discovery on the threshold issues related to the timeliness of the Second Complaint. (*Id.*) The Government argues

---

[10] In reviewing the file (the case was reassigned to the instant Court upon taking the bench), the Court noted that certain ministerial documents (*e.g.*, certificates of mailing) and similarities of certain fonts and use of legal terms suggested that an attorney might be involved in the preparation of Mr. Burchett's denominated *pro se* filings. Accordingly, the Court asked Mr. Burchett to request Mr. LeVert (whose name appeared on certain certificates of service or mailing) if he could come to a status so the subject could be discussed. Shortly thereafter, Mr. LeVert filed an appearance.

that Mr. Burchett's claim suffers from numerous threshold defects, and seeks summary judgment in its favor dismissing Mr. Burchett's claims.

## STANDARD OF REVIEW

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmovant cannot rest on the pleadings alone, but must identify specific facts, *see Cornfield v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a scintilla of evidence to show a genuine triable issue of material fact. *See Murphy v. ITT Educ. Servs., Inc.*, 176 F.3d 934, 936 (7th Cir. 1999) (citation omitted). The Court views the record and all reasonable inferences drawn therefrom in the light most favorable to the nonmovant. *See* Fed. R. Civ. P. 56©; *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004)

## DISCUSSION

This litigation has a long and winding history, and the Government asserts that multiple procedural failings warrant dismissal of Mr. Burchett's present claim. The Court finds that some of the Government's asserted procedural bases cannot be resolved upon summary judgment because of the existence of issues of material fact. However, the Court concludes that summary judgment is warranted on the independent grounds that (1) Plaintiff has conditioned his right to pursue the instant claim and he has failed, as the EEOC found, to fulfill necessary preconditions in his settlement agreements for him to pursue the instant claim; and (2) Plaintiff's Second

Complaint, his operative filing and the filing underlying the instant case, is untimely, and that principles of equitable tolling do not excuse the untimeliness.

     A.    Summary Judgment Is Warranted Because, As The EEOC Found, Mr. Burchett's Discrimination Claims Were Conditionally Waived In Connection With Prior Settlements, The Conditions of Which Required Him To Exhaust Certain Remedies Within the Jurisdiction of the MSPB and Federal Circuit, Which He Has Not Done

As the Government argues, Mr. Burchett may not pursue his claims in the instant case because "[h]e waived his right to pursue his claim through the EEO process when he entered into a settlement agreement before the Merit Systems Protection Board," which preconditions of settlement he did not fulfill. (D.E. 37 at 1.) Moreover, to the extent Mr. Burchett contends that the USPS did not abide by its end of the settlement by inadequately supporting his ensuing disability benefits claim, Mr. Burchett nonetheless did not appeal the denial of benefits as required by the settlement agreements, nor does he contend that he raised the issue of any alleged inadequacy of assistance from the USPS in the underlying litigation before either the MSPB or the Federal Circuit.

When Mr. Burchett was issued a discharge in early 1995, he exercised his right to appeal that discharge to the MSPB. (Pl. Resp. ¶ 3.) In his appeal, Mr. Burchett alleged that his discharge was discriminatory. (Def. SF ¶ 3.) In April 1995, Mr. Burchett, along with his union representative, entered into a "Firm Choice Last Chance Settlement Agreement" with the USPS, thereby resolving his litigation. The Settlement Agreement specified that, *inter alia*:

    a. the parties understood the terms of the agreement and entered into its terms of their own free will, without coercion, harassment, threats or intimidation;

22

b. Mr. Burchett agreed to pass a fitness for duty examination and a psychological examination to determine if he could meet the requirements of his position;

c. Mr. Burchett agreed that if he was unable to pass the fitness for duty and/or the psychological examination, the discharge would be effective; and

d. Mr. Burchett agreed that his MSPB appeal was withdrawn by the Settlement Agreement.

(Pl. Resp. ¶ 4; Def. SF, Ex. 1.) He also agreed that "this resolves any pending or future appeal through the Merit Systems Protection Board, EEO, Grievance/Arbitration, administrative union contract or judicial forum with respect to this removal action. The appellant know[s] and understand[s] that he waives any further appeal rights to the Merit Systems Protection Board, EEOC, judicial forum or under the applicable union contract with respect to this removal." (Def. SF, Ex. 1 at 3 (Settlement Agreement).) The Settlement Agreement delayed the effectiveness of Plaintiff's removal pending performance of the terms of the agreement. (*Id.* at 3-4.)

As noted above, the USPS in June 1995 found that Mr. Burchett failed the requisite fitness for duty examination. (Def. Resp. ¶ 5.) In July 1995, Mr. Burchett attempted to return to work, but the USPS refused to allow him, citing the failure to pass the fitness-for-duty test. Mr. Burchett petitioned the MSPB to enforce the Settlement Agreement, which led, in November 1995, to the dismissal of that petition without prejudice based on the Memorandum of Understanding that Mr. Burchett and his union representative reached with the USPS. That Memorandum of Understanding provided, *inter alia*, that Mr. Burchett could re-file his petition if the application for disability retirement was denied and the denial was upheld after appeal to the MSPB. (Pl. Resp. ¶ 7; Def. SF, Ex. 2; *accord id.*, Ex. 3 (November 9, 1995 ALJ

Opinion) (holding that if Mr. Burchett's "application is denied on appeal before the Board, the appellant [*i.e.*, Mr. Burchett] may refile the petition.").) In connection with this settlement/Memorandum of Understanding, Administrative Judge Miksa issued a decision regarding compliance in which he found that the settlement documented in the Memorandum of Understanding was lawful on its face, and further found that the parties freely entered into the agreement and understood its terms. (Pl. Resp. ¶ 8.) Administrative Judge Miksa dismissed without prejudice the Petition to Enforce the Settlement Agreement pending adjudication of Mr. Burchett's disability retirement application by the OPM, and, if necessary, by the MSPB on appeal. (*Id.*)

In May 1996, the OPM informed Mr. Burchett that it could not grant his request for disability retirement because of insufficient documentation. (*Id.* ¶ 9; *see also* Pl. SAF, Ex. 16 at 3 ("OPM Disallowance Letter").) Mr. Burchett contends, at least now, that the USPS insufficiently supported his benefits application at that time, even though USPS knew that OPM had denied his application. (D.E. 42 at 12.)[11]

Nonetheless, Mr. Burchett did not appeal to the MSPB as required by the settlement agreements and, in particular, the Memorandum of Understanding. (*See* Pl. Resp. ¶ 7; Def. SF, Ex. 2.) Instead, in June 1996, Mr. Burchett, through his attorney at the time, refiled his Petition

---

[11] In his argument on this point, Mr. Burchett simply asserts factual claims without any citation to the underlying record. (*See* D.E. 42 at 12.) That practice is improper under local rule. *See Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000). This failing likely provides an independent basis to reject any "violation of the Illinois implied covenant of good faith and fair dealing" argument that Mr. Burchett offers, over and above all the other reasons stated in this section. *See, e.g., Koszola v. Bd. of Ed. of City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004) ("[S]ummary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.") (internal quotation marks and citation omitted).

to Enforce the Settlement Agreement. (Pl. Resp. ¶ 10.) The USPS argued in response that the action was premature because Mr. Burchett had not appealed the OPM's denial of the disability claim to the MSPB—as required by the parties' Memorandum of Understanding. (*Id.* ¶ 11.) At that time, Mr. Burchett did not file any response to the USPS's motion, despite being given a chance to do so. (*Id.*) In ruling on the issue, ALJ Miksa found that Mr. Burchett failed to show that had satisfied a prerequisite to refiling the enforcement petition, namely that Mr. Burchett had exhausted his appeal rights to the MSPB. (*Id.*) In this regard, Administrative Judge Miksa expressly found that in his decision "that approved the parties' November 8, 1996 [sic] Memorandum of Understanding, . . . [Mr. Burchett] was advised: The petition for enforcement is DISMISSED without prejudice to his right to refile the petition only in the event that his disability retirement application is denied by OPM and on appeal, by the Merit Systems Protection Board."). (Def. SF, Ex. 5 at 3 (underlining in original omitted).) The ALJ therefore found that Mr. Burchett had "not demonstrated that he has fulfilled a necessary pre-condition to refiling his enforcement petition, and the petition must be DISMISSED without prejudice as premature." (*Id.*, Ex. 5 at 4.)

In May 1997, the MSPB summarily denied a petition for review of the October 1996 decision to dismiss Mr. Burchett's Petition to Enforce the Settlement Agreement. (Pl. Resp. ¶ 12.) That denial stated that any further appeal needed to be taken to the United States Court of Appeals for the Federal Circuit. (*Id.*) Mr. Burchett filed an appeal with the Federal Circuit concerning the MSPB ruling, but that appeal was defaulted because of Mr. Burchett's failure to prosecute. (*Id.* ¶ 15; *accord Burchett v. USPS*, 124 F.3d 228, 1997 WL 575847, *1 (Fed. Cir. Sept. 5, 1997 (unpublished order) ("The petitioner having failed to file the brief required by

25

Federal Circuit Rule 31(a) within the time permitted by the rules, it is ORDERED that the petition for review be, and same hereby is, DISMISSED, for failure to prosecute in accordance with the rules.").)[12]

These defaults prompted the EEOC to find that Mr. Burchett had not fulfilled a necessary precondition to seeking relief as he does in the instant case. More specifically, and as explained below, at the same time as Mr. Burchett was engaged in proceedings before the MSPB and Federal Circuit—all concerning the dismissal of his petition to enforce without prejudice because he had failed to appeal on the merits to the MSPB concerning his denial of benefits, as required by his settlement agreements—Mr. Burchett contacted the USPS EEO department, alleging that his January 1995 discharge was discriminatory. (Pl. Resp. ¶ 13.) Mr. Burchett filed a formal EEO complaint on October 7, 1997, in which he alleged that he was discriminated against on the bases of his race (African-American) and mental disability (dementia) when he was removed from the position of Postal Police Officer. (*Id.* ¶ 16; Pl. SAF, Ex. 7 at 1.)[13]

---

[12] The Court respectfully rejects any suggestion by Mr. Burchett that a dismissal—for failure to prosecute in conformity with the rules of a federal appellate court—does not operate as an adjudication on the merits. *See, e.g., In re: Bagdade*, 334 F.3d 568, 573 (7th Cir. 2003) (citing Fed. R. Civ. P. 41(b)).

[13] The underlying record reveals that Mr. Burchett never advanced a failure-to-accommodate claim before the USPS EEO. (*See* Pl. Resp. ¶ 16; Def. SF, Ex. 7 at 1 (USPS EEO decision stating that Mr. Burchett "alleged he was discriminated against on the basis of race (Black) and mental disability (Dementia) when he was removed from the position of Postal Police Officer."); Pl. SAF, Ex. 17 at 1 (letter from EEOC appeals officer noting that issue under review was alleged discrimination on the basis of race and disability in connection with Mr. Burchett's removal from the position of Postal Police Officer); *id.* (noting that the EEOC-OFO's investigation would concern only allegations of race and disability discrimination in connection with Mr. Burchett's "remov[al] from the position as Postal Police Officer," and stating that, "[i]f you do not agree with the defined issue(s), you must provide us with sufficient reasons, in writing, within seven (7) calendar days . . . .").) Even the First Complaint, which underlay Case No. 02 C 9070 before Chief Judge Kocoras, advanced no failure-to-accommodate claim. (*See* Def. SF, Ex. 14 (First Complaint) ¶ 12 (designating that Plaintiff was advancing suit concerning his termination but omitting any designation concerning alleged failure to accommodate an actual

26

The Final Agency Decision of the USPS concerning Mr. Burchett's EEO complaint issued in December 1999. (Def. SF, Ex. 7.) That Final Agency Decision stated that, "[c]learly, complainant cannot at this time initiate, or seek redress through, the EEO complaint process on his removal." (*Id.* at 2.) The Final Agency Decision further noted that, *inter alia*, in the "Firm Choice Last Settlement Agreement" (*i.e.*, the Settlement Agreement), Mr. Burchett and his representative agreed "to the terms of the settlement agreement" and agreed to "withdraw their appeal to the MSPB for the removal action and agree that this resolves any pending or future appeal through the Merit Systems Protection Board, EEO, Grievance/Arbitration, administrative, union contract or judicial forum with respect to this removal action." (*Id.* at 1; *see also* Def. SF, Ex. 1 at 3 ("The appellant know[s] and understand[s] that he waives any further appeal rights to the Merit Systems Protection Board, EEOC, judicial forum or under the applicable union contract with respect to this removal.").)

---

or perceived disability).) The first time a failure-to-accommodate theory was advanced was in the Second Complaint—well after the EEOC proceedings at issue. (*See* Def. SF, Ex. 16 (Second Complaint) ¶ 12 (now designating that Plaintiff is advancing suit in connection with the USPS's termination and alleged failure to accommodate).)

Precedent teaches that a litigant like Mr. Burchett cannot advance a claim in district court litigation that he did not raise during his EEO proceedings. *See, e.g., Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) ("As a general rule, a . . . plaintiff [in an employment discrimination case] cannot bring claims in a lawsuit that were not included in her EEOC charge.") (citation omitted). Although this doctrine allows for presentation of a claim that the EEOC should have investigated given the nature of the claim(s) actually presented, Mr. Burchett provides no evidence or suggestion that he objected to the EEOC-OFO's designation of the issues presented for investigation, nor that the EEOC-OFO's reading of the scope of his EEO complaint was unreasonable. Accordingly, in addition to all the other problems discussed herein, any putative failure-to-accommodate claim is barred under principles articulated in cases like *Cheek. Accord, e.g., Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894, 898-99 (7th Cir. 1999) ("As we have stated previously, a failure to accommodate claim is separate and distinct from a claim of discriminatory treatment under the ADA.") (citing *Weigel v. Target Stores*, 122 F.3d 461, 464 (7th Cir. 1997)).

Mr. Burchett appealed the Final Agency Decision to the Office of Federal Operations of the EEOC. (Pl. Resp. ¶ 18.) The EEOC-OFO in July 2001 issued a decision which, after reviewing the course of the proceedings involving Mr. Burchett, found that the MSPB Settlement Agreement and subsequent events precluded Mr. Burchett from raising his discharge at that time with the EEO. (*Id.*) In doing so, the EEOC-OFO found that the May 1, 1997 MSPB decision "was an action to effectuate the MSPB Settlement agreement and that complainant [*i.e.*, Mr. Burchett] was precluded from filing an EEO complaint on the same matter." (Def. SF, Ex. 10 at 2.) The EEOC-OFO further noted that the Settlement Agreement had waived any further appeal rights to the EEOC or other judicial forum. (*Id.*, Ex. 10 at 2-3; *see also id.*, Ex. 1 at 3.) The EEOC-OFO further found that Mr. Burchett's waiver in the Settlement Agreement was a valid one that should be upheld. (Def. SF, Ex 10 at 3.) In a subsequent denial of Mr. Burchett's request for reconsideration, the EEOC-OFO found that "the previous decision properly affirmed the agency's decision finding that the complainant had raised the matter in an appeal to the MSPB and his claim was resolved by a settlement pursuant to that proceeding." (Pl. Resp. ¶ 21 (quoting Def. SF, Ex. 11).)

The Court agrees with the EEOC that Mr. Burchett cannot properly proceed in this forum; this conclusion is predicated on Mr. Burchett's prior settlement agreements and subsequent actions and non-actions, as explained throughout this section. In the Settlement Agreement, Mr. Burchett withdrew his MSPB appeal and agreed that "this [Settlement Agreement] resolves any pending or future appeal through the Merit Systems Protection Board, *EEO . . . administrative, union contract or judicial forum with respect to this removal action. The appellant know[s] and understand[s] that he waives any further appeal rights to the Merit Systems Protection Board,*

*EEOC, judicial forum* or under the applicable union contract with respect to this removal." (Def. SF, Ex. 1 at 3 (emphases added).) The Settlement Agreement also specifically provided that the parties "understood the terms of the agreement and entered into its terms of their own free will without coercion, harassment, threats or intimidation," and that Mr. Burchett "agreed to pass a fitness for duty examination and a psychological examination" before he could be reinstated as a Postal Police Officer. (Pl. Resp. ¶ 4.)

When Mr. Burchett, in possession of his alleged V.A. clean bill of health, thereafter petitioned the MSPB to enforce the Settlement Agreement ("Petition to Enforce"), Mr. Burchett and his representative entered into the Memorandum of Understanding with the USPS which provided that Mr. Burchett would apply for disability retirement with OPM and that Mr. Burchett could "re-file his petition if the application for disability retirement was denied and the denial was upheld after appeal to the Board [MSPB]." (Pl. Resp. ¶ 7; Def. SF, Ex. 2.) This Memorandum of Understanding, and specifically its unmet requirement that Mr. Burchett exhaust appeal rights to the MSPB, was what prompted Administrative Judge Miksa in the decision underlying the appeal to the Federal Circuit to dismiss Mr. Burchett's petition to enforce without prejudice as premature. (Pl. Resp. ¶ 11; *see also* Def. SF, Ex. 5 at 4 (ALJ finding that "the appellant has not demonstrated that he has fulfilled a necessary pre-condition to refiling his enforcement petition, and the petition must be DISMISSED without prejudice as premature.").) Instead of taking heed of that directive—*i.e.*, that Mr. Burchett needed, under his settlement agreements, to exhaust his appeal rights with the MSPB—Mr. Burchett simply appealed the ALJ's dismissal for failure to exhaust. That appeal was summarily rejected, and Mr. Burchett

then defaulted a subsequent appeal of the dismissal for failure to exhaust by failing to prosecute the appeal in conformity with the rules and requirements of the Federal Circuit.

The Court concurs with the EEOC and the ALJ that Mr. Burchett may not fail to fulfill his obligation to prosecute his underlying claim to the MSPB, as required by the Memorandum of Understanding, and nonetheless seek to obviate the terms of the Settlement Agreement, which otherwise provided for a waiver of his right to air the removal dispute before the EEOC and/or in a judicial forum. Mr. Burchett has never appealed the denial of his benefits claim, as required, and he cannot evade that requirement by simply appealing an ALJ refusal to allow him to proceed that was based on his failure to exhaust his appeal rights before the MSPB. Otherwise, the obligation for him to appeal to the MSPB—*i.e.*, the foundation of the ALJ's dismissal without prejudice, and a central term of the settlement agreements—would be rendered meaningless. *See generally, e.g., United States v. Cook*, 668 F.2d 317, 321 (7th Cir. 1982) (teaching that agreements should not be understood in a manner that renders terms meaningless or "practically meaningless"); *AM Gen. Corp. v. Daimlerchrysler Corp.*, 311 F.3d 796, 820 (7th Cir. 2002) (similar; applying New York law); *Hostmark Investors Ltd v. GEAC Enter. Solutions, Inc.*, No. 01 C 8950, 2002 WL 1732360, at *3 (N.D. Ill. July 26, 2002) (collecting cases and applying "the age-old principle that contracts must not be interpreted so as to render clauses superfluous or meaningless.").

Mr. Burchett does not contend that he ever exhausted the merits of his disability denial, as required by the Memorandum of Understanding. Nor does Mr. Burchett challenge the EEOC's finding that the waiver of EEOC and other rights was a knowing waiver made without duress. (*See* Def. SF, Ex. 10 at 3 (July 25, 2001 EEOC-OFO Decision holding that "the EEOC

will uphold the waiver"); *see also Donelson v. City of Chicago*, 272 F. Supp. 2d 717, 728 (N.D. Ill. 2003) (Castillo, J.) (collecting cases and stating that "[t]here is no question that a plaintiff may waive her right to bring a Title VII claim as part of a settlement agreement so long as her consent was both voluntary and knowing.").)

Instead, Mr. Burchett seeks to invoke Illinois contract law to contend that the USPS failed to sufficiently support his efforts in the underlying disability benefits claim that was an outgrowth of the Memorandum of Understanding. (*See* D.E. 42 at 10 (Mr. Burchett contending that the USPS violated the Illinois doctrine of good faith and fair dealing); *id.* at 11 (Mr. Burchett contending that the USPS engaged in fraudulent inducement).) There are two independent problems with such a position, however: (1) Mr. Burchett never exhausted his appeal requirement, irrespective of what the USPS may or may not have done; and, equally important, (2) Mr. Burchett does not suggest that he aired any of these objections in the underlying litigation, which culminated in his defaulting his appeal in the Federal Circuit for failure even to file a brief as required. The Court concurs with the EEOC that these failings are fatal. *See, e.g.*, *In Re: Bagdade*, 334 F.3d 568, 573 (7th Cir. 2003) (dismissal for failure to prosecute "'operates as an adjudication upon the merits.'") (quoting Fed. R. Civ. P. 41(b)).

B. Questions of Material Fact Exist Regarding Whether The EEOC-OFO's February 13, 2002 Decision Triggered The Limitations Period

The Government argues that Mr. Burchett's First and Second Complaints were untimely because they were filed more than 90 days after the EEOC-OFO denied his motion for reconsideration on February 13, 2002. (D.E. 37 at 12-13.) The Court concludes that there are

issues of material fact regarding Mr. Burchett's receipt of the February 13, 2002 Decision that preclude the entry of summary judgment on this basis.

A discrimination suit against the federal government must be filed within 90 days of the plaintiff's receipt of the final agency decision. *See* 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407(c); *Houston v. Sidley & Austin*, 185 F.3d 837, 838-39 (7th Cir. 1999) ("Under the ADA, ADEA, and Title VII, a plaintiff must file . . . [his] suit within 90 days from the date the EEOC gives notice of the right to sue.") (citations omitted). "'The time limit is not flexible, even for *pro se* litigants, and a one-day delay is fatal.'" *Johnson v. Spiegel, Inc.*, No. 02 C 0680, 2002 WL 1880137, at *2 (N.D. Ill. Aug. 15, 2002) (Pallmeyer, J.) (quoting *Davis v. Browner*, 113 F. Supp. 2d 1223, 1225 (N.D. Ill. 2000) and collecting numerous cases, including *Brown v. City of Chicago*, No. 96 C 3078, 1998 WL 704278, at *3 (N.D. Ill. Sept. 30, 1998) (Williams, J.)).

Seventh Circuit precedent teaches that the 90-day period begins to run when the claimant receives actual notice of his right to sue. *See, e.g., Houston*, 185 F.3d at 839 (collecting cases); *accord, e.g., Jones v. Madison Serv. Corp.*, 744 F.2d 1309, 1312 (7th Cir. 1984). However, the Seventh Circuit has held that when notice is delayed by or through fault of the plaintiff, "the constructive receipt doctrine applies and the 90-day clock starts running once delivery is attempted at the last address provided." *Reschny v. Elk Grove Plating Co.*, 414 F.3d 821, 823 (7th Cir. 2005); *accord, e.g., Moore v. Henderson*, 174 F. Supp. 2d 767, 773 (N.D. Ill. 2001) (Conlon, J.) ("[W]here the plaintiff's receipt of the notice is delayed, a fault approach is used."); *id.* at 773-74 (reviewing different situations that constituted fault and concluding that fault rested with the plaintiff for her failure to report her address changes to the EEOC).

In the present matter, Mr. Burchett has stated in an affidavit that he never received the February 13, 2002 Decision. (*See* Pl. Resp. ¶ 22; *see also* Pl. SAF, Ex. 1 ¶ 11 (Burchett Aff.).) The Government has produced no evidence *specifically* refuting Mr. Burchett's claim that he did not receive the February 13, 2002 Decision—instead the Government merely produced circumstantial evidence that could be understood, at least potentially, to cast doubt on the validity of Mr. Burchett's contention. In this regard, the Court notes that the actions taken by Mr. Burchett subsequent to the mailing of the February 13, 2002 Decision issuing do not undermine his statement that he did not receive it. For example, at some point between February 2002 and September 2002, Mr. Burchett apparently wrote the EEOC-OFO to inquire about the status of his case. (Pl. Resp. ¶ 24.) Based on his affidavit and universe of available evidence, Mr. Burchett has created an issue of material fact on the question of whether he actually received the February 13, 2002 Decision.

Although the Government introduces no evidence directly reflecting that Mr. Burchett actually received the February 13, 2002 Decision, the Government's position is that the 90-day period started running shortly after the decision issued because "the certificate of service indicates [that] a copy was mailed to him, and he has offered no excuse for his failure to retrieve the decision." (D.E. 44 at 4-5.) However, the Court respectfully concludes that the Government's statement about the mailing of the Decision is somewhat off-base, because there is no "certificate of service" for the February 13, 2002 Decision; instead there is a "certificate of mailing," which is a statement from an EEOC-OFO assistant personally certifying that the decision was mailed to Mr. Burchett on February 13, 2002. (Def. SF, Ex. 11 at 4.) Significantly, the Certificate of Mailing does not indicate to what address the decision was mailed. Nor does it

33

indicate that the Decision was sent by certified mail, and the Government has not set forth any other evidence showing that the Decision was sent by a mail service that tracked delivery and documented receipt. Because, to this point, the Government has not produced evidence showing that the February 13, 2002 Decision was properly addressed and mailed to Mr. Burchett, the Government is not entitled to a presumption of receipt. *See, e.g., Boomer v. AT & T Corp.*, 309 F.3d 404, 415 n.5 (7th Cir. 2002) ("Where a letter is *properly* addressed and mailed, there is a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed.") (emphasis added; internal quotation marks and citation omitted); *accord, e.g., Lawrence v. Jackson Mack Sales, Inc.*, 837 F. Supp. 771, 783-84 (S.D. Miss. 1992) (denying summary judgment to defendant where it failed to introduce sufficient evidence that COBRA notices were addressed and mailed properly).

By contending that Mr. Burchett has failed to explain why he did not "retrieve the decision," the Government appears to assert that Mr. Burchett was at fault and so is not entitled to the benefits of the "actual notice rule." *See, e.g., Jones v. Motorola, Inc.*, No. 00 C 6439, 2001 WL 864273, at *5 (N.D. Ill. July 30, 2001) (Castillo, J.). With respect, the Court finds that the "fault" cases cited by the Government are factually distinguishable from the present matter. For example, in the cases where the courts charged the plaintiff with constructive notice, the evidence showed that the plaintiff had been at fault either by failing to notify the EEOC of a change of address, *see, e.g., Saunders v. American Warehousing Servs., Inc.*, No. 92 C 7650, 2003 WL 21266652, at *2 (N.D. Ill. May 30, 2003) (Coar, J.), or by failing to retrieve the certified letter within the timeframe that the Post Office's notice gave before the letter would be returned to the sender. *See, e.g., Jones*, 2001 WL 864273, at *5-6.

34

In the present matter, there is no specific or uncontroverted evidence of delivery (again, Mr. Burchett avers that he never received the letter) and consequently no evidence on Mr. Burchett's part of ignoring any certified mail notices. In addition, there is no contention that Mr. Burchett's address information with the EEOC-OFO was allowed by him to lapse out of date. Accordingly, Plaintiff has at least raised an issue of material fact about whether he had actual notice of the February 13, 2002 Decision that would have commenced the running of the 90-day period at that time. Similarly, the factual record does not conclusively establish that any constructive notice/fault regime is applicable. As a result, the Court respectfully denies the Government's request to grant summary judgment on the basis that both the First and Second Complaints were untimely in relation to the February 13, 2002 EEOC-OFO Decision.

### C. Plaintiff's Operative Complaint Is Nonetheless Untimely And No Equitable Tolling Is Warranted

As the Government contends, Mr. Burchett's Second (and operative) Complaint, which underlies the instant action in Case No. 03 C 1325, is untimely and no equitable tolling is warranted on the circumstances presented. This basis for dismissal independently warrants dismissal of the suit, even if the Government were incorrect about the other appropriate basis for dismissal previously discussed, which it is not.

#### 1. The Statutory Period Commenced With The September 23, 2002 Letter

Although issues of material fact preclude a finding that the February 13, 2002 Decision triggered the 90 day period, Mr. Burchett's suit is nonetheless time-barred. As Mr. Burchett has repeatedly admitted in this case—both in his initial *pro se* filings, in subsequent filings "*pro se*" filings that were actually prepared by counsel, and in his deposition—he unquestionably received

the EEOC's September 23, 2002 Letter, understood it to be a right-to-sue letter, and in fact used the document as a right-to-sue letter when filing his complaints. As a result, and for the reasons explained below, the Court finds that the 90-day period to sue commenced upon Mr. Burchett's undisputed receipt of the September 23, 2002 Letter from the EEOC.

For example, in prior filings in the district courts, Mr. Burchett stated that he "regarded that letter as his 'right to sue letter,' and acted in accordance with that belief by filing a suit [before Chief Judge Kocoras] within 90 days from the date of that letter." (Pl. Resp. ¶ 26 (quoting D.E. 14 (Plaintiff's Resp. to Govt.'s Motion to Dismiss) at 3).) Furthermore, Mr. Burchett has represented that the September 23, 2002 Letter "in its overall tenor and tense informed plaintiff of: (1) a right to file suit within 90 days; (2) where to file suit; (3) how to get legal representation; and (4) some procedural points to filing suit." (Id. (quoting D.E. 14 at 2).) Mr. Burchett has also represented that in November 2002 he told attorney LeVert that he received a right to sue letter from the EEOC, and that attorney LeVert advised him of the elements of a disability discrimination claim and the filing deadline for bringing such a claim. (Id. (citing D.E. 25 at 7 n.1); see also Def. SF, Burchett Dep. at 53 (Mr. Burchett's deposition testimony acknowledging that he received the EEOC Letter "saying that I had the right to sue which would be in September of 2002.").) The First Complaint also attached the September 23, 2002 Letter from the EEOC as a right to sue letter concerning the suit. (See Def. SF, Ex. 14 (First Complaint) ¶ 8(b) and attached September 23, 2002 Letter from EEOC).)

As previously explained, Chief Judge Kocoras dismissed the First Complaint by a final judgment, which dismissed the complaint without prejudice because the allegations in it revealed that Mr. Burchett was complaining about being fired due to a personality conflict rather than any

discrimination. (Pl. Resp. ¶ 29.) Mr. Burchett did not appeal Chief Judge Kocoras's December 27, 2002 final judgment, nor did he file any motion to vacate that judgment. (*Id.* ¶ 30.) Instead, Mr. Burchett waited until January or February 2003, at which time he asked attorney LeVert about Chief Judge Kocoras's final judgment. (*Id.* ¶ 31.) Attorney LeVert reviewed the judgment and advised Mr. Burchett to file a "Motion to Vacate the Final Judgement and for Leave to File an Amended Complaint" that would remove any reference to a personality conflict. (*Id.*) Mr. Burchett did not follow attorney LeVert's advice or file such a motion to vacate the final judgment; instead, he filed, on February 21, 2003, nearly two months after the judgment dismissing his initial complaint, a second complaint. (*Id.* ¶ 32.) The second complaint (*i.e.*, the Second Complaint) was given a different case number and assigned to Judge Leinenweber. (*Id.*) Mr. Burchett contends that he did not intend for the Second Complaint to commence a new suit, but instead intended it as an amendment to his prior complaint. (*Id.* ¶ 3.)

Precedent teaches that "if . . . [a] suit is dismissed without prejudice, meaning that it can be refiled, then the tolling effect of the filing of the suit is wiped out and the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by that filing."[14] *Elmore v. Henderson*, 227 F.3d 1009, 1011 (7th Cir. 2000)

_____

[14] In this case, the parties agree that Chief Judge Kocoras entered a final judgment (*see, e.g.*, Pl. Resp. ¶¶ 29-30), and they also agree that attorney LeVert, when shown Chief Judge Kocoras's judgment, advised Mr. Burchett to file a "Motion to Vacate the Final Judgement and for Leave to File an Amended Complaint." (*Id.* ¶ 31.) In the interests of thoroughness, the Court notes that the final judgment, which was denominated as a "Judgment in a Civil Case," also reflected that Mr. Burchett's complaint was dismissed without prejudice. To the extent there is any arguable ambiguity in the judgment—in that it appears to dismiss both the *case* and/or the *complaint* without prejudice—precedent teaches that a court should err on the side of caution and treat the dismissal as a dismissal of the case without prejudice, so as to allow appellate review, if sought and warranted. *See Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003) ("When the district court's resolution looks both ways, the only safe route is to treat it as final: the alternative lays a trap for the unwary (or even wary) litigants, who may forego appeal in reliance on the

(collecting cases). (In such an instance, a court must consider the potential applicability of equitable tolling, as will be addressed below.)

Case No. 02 C 9070 was filed on December 13, 2002, and Chief Judge Kocoras entered a final judgment dismissing the complaint without prejudice on December 27, 2002. (Pl. Resp. ¶ 29; Def. SF, Ex. 15 (D.E. 6 in Case No. 02 C 9070).) This final judgment did not toll the running of the statute of limitations triggered by the September 23, 2002 Letter from the EEOC, which would therefore expire by approximately the end of calendar year 2002. *See, e.g., Elmore*, 227 F.3d at 1011 & discussion in footnote 14 of this opinion, *supra; Brown v. Ill. Dept. of Public Aid*, 318 F. Supp. 2d 696, 698-99 (N.D. Ill. 2004) (Bucklo, J.) (citing, *inter alia, Elmore*, 227 F.3d at 1011). Under any view of things, Mr. Burchett did not refile anything until February 21, 2003. (Pl. Resp. ¶ 32.) (In the interim period following the final judgment of dismissal, Mr. Burchett did speak to attorney LeVert, who advised him to file a "Motion to Vacate the Final Judgement and for Leave to File an Amended Complaint," which advice Mr. Burchett undeniably ignored. (*Id.* ¶¶ 31-32.).) As explained below, this subsequent filing was untimely,

---

'without prejudice' language only to learn later, and to their sorrow, that the original order was appealable and the time for appellate review has lapsed."); *accord Ciralsky v. Central Intelligence Agency*, 355 F.3d 661, 668 (D.C. Cir. 2004) (Garland, J.). The Court further notes that when Mr. Burchett eventually filed a "*pro se*" motion (that actually had been prepared by counsel) in late April 2003—which motion sought to invoke Fed. R. Civ. P. 60 and 15 and sought leave to file an amended complaint—Chief Judge Kocoras summarily denied that motion. (Def. SF, Ex. 20 (D.E. 8 in Case No. 02 C 9070).) That summary denial occurred, notwithstanding that Mr. Burchett advanced the same contentions he does here—*i.e.*, that he actually was trying to file an amended complaint when he filed the Second Complaint that was docketed before Judge Leinenweber as Case No. 03 C 1325. (Def. SF, Ex. 19 (D.E. 7 in Case No. 02 C 9070 at 2).) *See, e.g., Ciralsky*, 355 F.3d at 668 (stating that the district court's denial of plaintiff's motion to amend the complaint as moot was evidence that the court regarded its prior order as dismissing the action, and not merely the complaint). Mr. Burchett never appealed Chief Judge Kocoras's denial of his motion to file an amended complaint, nor did he ever appeal Chief Judge Kocoras's prior final judgment of December 27, 2002.

38

as it did not occur within the 90-day window triggered by the September 23, 2002 Letter from the EEOC. *See, e.g., Elmore*, 227 F.3d at 1011 (collecting cases concerning the non-effect of a dismissal without prejudice of a case); *id.* at 1013 ("By fixing 90 days as the deadline for suing after final agency action, the Postal Service has emphasized the urgency of prompt resolution of employment claims against it."); *Brown*, 318 F. Supp. 2d at 698-99 (citing, *inter alia, Elmore*, 227 F.3d at 1011).

### a. Mr. Burchett's Jurisdictional Challenge To The Operative Effect Of Chief Judge Kocoras's Final Judgment Is Respectfully Rejected

Mr. Burchett argues that the effect of Chief Judge Kocoras's final judgment is not operative, in that "it was rendered at a time when the court arguably was without subject matter jurisdiction" because Mr. Burchett did not have a sufficient EEOC right-to-sue letter. (D.E. 42 at 10.) This argument is related to another argument, discussed further below, in which Mr. Burchett contends that notwithstanding that he previously has represented on many occasions that the September 23, 2002 Letter from the EEOC was a right to sue letter (*see, e.g.*, Pl. Resp. ¶¶ 27, 35), and that he understood it as such (*see, e.g., id.* ¶ 26), the letter was technically deficient under certain regulations. The Court will address the "technical deficiency" argument below, but first takes up the "arguably no jurisdiction" argument of Mr. Burchett concerning proceedings before Chief Judge Kocoras.

The Court respectfully rejects the suggestion that Chief Judge Kocoras was without jurisdiction to proceed in the case before him (Case No. 02 C 9070). Precedent is clear that "the receipt of a right-to-sue letter is not a jurisdictional prerequisite to bringing a Title VII suit." *Worth v. Tyler*, 276 F.3d 249, 259 (7th Cir. 2001) (citing *Zipes v. Trans World Airlines, Inc.*, 455

U.S. 385, 398 (1982)).  Instead, "the lack of a right to sue letter may constitute a defense to a Title VII claim."  *Worth*, 276 F.3d at 259 (citation omitted).  This precedent refutes Mr. Burchett's assertion that any alleged lack of a technically-compliant right-to-sue letter stripped Chief Judge Kocoras (or Judge Leinenweber) of jurisdiction to proceed.

The Court further notes that nothing in Chief Judge Kocoras's judgment of dismissal turned on any issue concerning a right-to-sue letter; in that dismissal, the court did not question Mr. Burchett's own representation that the September 23, 2002 Letter from the EEOC was a right to sue letter, but instead rejected the case as substantively inadequate, at least as framed.  Simply put, the Court respectfully rejects any assertion that Chief Judge Kocoras (and Judge Leinenweber, and by extension, presumably this Court) lack subject matter jurisdiction because of any eleventh-hour allegation that the September 23, 2002 Letter from the EEOC—which Mr. Burchett has long contended was a right-to-sue letter—has some technical defect in it.  *Accord*, *e.g.*, *Worth*, 276 F.3d at 259.

> b.  The Court Also Respectfully Rejects Any Contention That Any Technical Defect In the September 23, 2002 Letter From The EEOC Rendered It Inoperative

Similarly, the Court also respectfully rejects the argument that there was some material defect in the September 23, 2002 Letter from the EEOC, such that the 90-day window to sue was not triggered.  It is undisputed that the September 23, 2002 Letter advised Mr. Burchett that: (1) the EEOC would not provide him with any further relief; (2) he had the right to file suit in district court; (3) the 90-day limitation period for bringing suit had commenced; (4) there were various procedural requirements that he had to follow in bringing suit; and (5) he could obtain information from various sources to assist in his district court filing.  (Pl. Resp. ¶ 25.)

Furthermore, Mr. Burchett has, in a written filing, represented to the district court that the September 23, 2002 Letter "in its overall tenor and tense informed plaintiff of: (1) a right to file suit within 90 days; (2) where to file suit; (3) how to get legal representation; and (4) some procedural points of filing suit." (D.E. 14 at 2; *see also* Pl. Resp. ¶ 26.) Mr. Burchett represented to the district court that he "regarded that letter as his 'right to sue' letter, and he acted in accordance with that belief by filing suit [*i.e.*, Case No. 02 C 9070 before Chief Judge Kocoras] within 90 days from the date of the letter." (D.E. 14 at 3; *see also* Pl. Resp. ¶ 25.) In addition, Mr. Burchett has represented to the district court that, back in 2002, he told attorney LeVert that he had received a right-to-sue letter from the EEOC and attorney LeVert advised Mr. Burchett of the elements of a disability discrimination claim and the filing deadline for bringing suit on such a claim. (D.E. 14 at 7 n.1; *see also* Pl. Resp. ¶ 26.) Mr. Burchett's First Complaint, docketed before Chief Judge Kocoras as Case No. 02 C 9070, and his Second Complaint, docketed before Judge Leinenweber as Case No. 03 C 1325, both represented that the September 23, 2002 Letter from the EEOC was Mr. Burchett's right-to-sue letter, and he attached a copy of the September 23, 2002 Letter to the First Complaint. (Pl. Resp. ¶ 35; Def. SF, Ex. 14.)

As noted above, Mr. Burchett now attempts to reverse course on his prior representations and to contend that the September 23, 2002 Letter suffers from technical deficiencies, such that it should not actually be understood to be sufficient to function as he has contended in the past. In this regard, a review of the relevant statutes reveals that there is no "statutorily mandated" content of a notice of the right to sue. Section 2000e-16(c) of Title 42 merely states that the aggrieved federal employee shall bring a civil action "within 90 days of receipt of notice of final action taken by a department, agency or unit . . . ." *Id.* Section 2000e-5(f)(1) of Title 42, which

is made applicable to civil actions filed by federal employees by 42 U.S.C. § 2000e-16(d), further

states that where the Commission [*i.e.*, the EEOC] has not filed a civil action upon request of an

individual, the EEOC "shall so notify the person aggrieved and within ninety days after the

giving of such notice a civil action may be brought . . . ." 42 U.S.C. § 2000e-5(f)(1). Thus, the

pertinent statutes require "a dismissal by the EEOC followed by notice to the person aggrieved"

to start the limitations period, but the legislative statements offer "no specific command about

form or content" of the notice. *Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103, 109 (3d Cir.

2003); *see also id.* at 116 (holding that oral notice can start the 90-day period, where such oral

notice is equivalent to written notice).

As for Seventh Circuit case law discussing the requirements of notice of a plaintiff's right

to sue, in *Jones v. Madison Serv. Corp.*, 744 F.2d 1309 (7th Cir. 1984), the Seventh Circuit

stressed that "the most crucial concept in this matter . . . is the actual knowledge that the time

period in which a suit can be filed has commenced." *Id.* at 1313 (concluding that "[s]uch

knowledge is conveyed equally well through personal receipt of the right-to-sue letter by the

claimant and through receipt of that letter by the attorney representing him in the action."). *Jones*

went on to observe that "the specific fact situations will vary considerably, and there will

undoubtably be times when the courts will have to inquire into those fact situations to determine

if there was actual, binding knowledge." *Id.* The Court understands *Jones* to teach that, where

the propriety of notice is challenged, a district court must be sensitive to evaluate whether a

plaintiff received fair notice of his right to sue and that a 90-day clock had started concerning

when to file an effective suit. As explained above, when one looks at the specific facts and

circumstances of this case, including Mr. Burchett's own repeated and express representations, it is clear he was under no ambiguity about his right to sue and the time available to do it.

It does not appear, from the Plaintiff's briefing, that he contends that any further technical defects under federal regulations rendered the September 23, 2002 Letter inoperative as a matter of law—as opposed to, as the argument seems actually to be made, a factor that should be considered in the equitable tolling analysis conducted immediately below. (*See* D.E. 42 at 14-16.) In any event, to the extent the argument is made by Mr. Burchett, the Court respectfully rejects any implicit suggestion that any defect under federal regulations renders the September 23, 2002 Letter inoperative.

The federal regulation that Mr. Burchett cites (*see* D.E. 42 at 15) is 29 C.F.R. § 1601.28, which describes the "content of notice of right to sue." 29 C.F.R. § 1601.28(e).[15] The regulation states that:

> (e) . . . The notice of right to sue shall include
>
> (1) Authorization to the aggrieved person to bring a civil action under Title VII or the ADA . . . within 90 days from receipt of such authorization;
>
> (2) Advice concerning the institution of such civil action by the person claiming to be aggrieved, where appropriate;
>
> (3) A copy of the charge;
>
> (4) The Commission's decision, determination, or dismissal, as appropriate.

*Id.*

---

[15] The section of the regulation regarding the content of the notice of right to sue also applies to notices of right to sue for charges against governmental agencies. *See* 29 C.F.R. § 1601.28(d).

As previously mentioned, the September 23, 2002 Letter provided extensive information about Mr. Burchett's case and rights, and he proceeded accordingly upon that information. Mr. Burchett also has represented to the district court, on many occasions, that the September 23, 2002 Letter was an EEOC right-to-sue letter and that he understood it as such. (Pl. Resp. ¶¶ 26, 35.) In fact, according to Mr. Burchett, in the Fall of 2002, he told attorney LeVert that he (Mr. Burchett) had received a right to sue letter from the EEOC, and Mr. LeVert advised Mr. Burchett about the elements of a disability discrimination claim and the filing deadline for bringing such a claim. (Pl. Resp. ¶ 26 (citing D.E. 25 at 7 n.1).) Thus, following Mr. Burchett's receipt of the September 23, 2002 Letter, there is ample, unrefuted evidence of what the Seventh Circuit has termed the "crucial concept," namely Mr. Burchett's actual knowledge that the time period in which his suit could be filed had commenced. *See Jones*, 744 F.2d at 1313.[16]

The Court acknowledges that the September 23, 2002 Letter does not contain all of the content listed in 29 C.F.R. § 1601.28(e): while the Letter states that Mr. Burchett has exhausted his administrative remedies and that the 90-day statutory period has commenced, and provides plain-spoken advice concerning the filing of an action, the EEOC did not attach a copy of the charge or of the February 13, 2002 Decision to the September 23, 2002 Letter. However, while the Seventh Circuit has not ruled explicitly on this issue, the Court believes that looking to the reality of the situation, rather than merely evaluating bare compliance with the regulation, is consistent with the spirit of Seventh Circuit teaching on this issue. *See generally Jones*, 744 F.2d at 1313 (directing district courts to inquire, where necessary, "into those fact situations to determine if there was actual, binding knowledge.").

---

[16] Indeed, even documents prepared by attorney LeVert represented that the September 23, 2002 Letter was a right-to-sue letter. (*See, e.g.*, Def. SF, Ex. 18 ¶ 1.)

Moreover, other Courts of Appeals have warned against elevating form over substance and requiring each item listed in the regulation to be provided before actual notice is found. As the Third Circuit stated in *Ebbert*, "[i]t simply would not make sense to force courts and defendants to wait for a specific form of notice in situations where a plaintiff is fully aware of the deadline he or she must meet to prosecute a lawsuit. The opposite rule would mean, in the extreme case that the limitations period would not begin to run for years, or even ever" if the EEOC did not successfully send a fully-technically-compliant right to sue letter to the plaintiff. *Id.*, 319 F.3d at 116; *see also Missirlian v. Huntington Mem'l Hosp.*, 662 F.2d 546, 550 & n.6 (9th Cir. 1981) (stating that "[b]ecause we focus on the elements of notice, we do not hold that the right-to-sue letter is the only possible form of adequate notice."). In the present matter, the problematic scenario discussed by the Third Circuit has come to life. Mr. Burchett was fully aware of the deadline he had to meet to prosecute his claim, but he now argues that because he has not received a right-to-sue letter that is compliant with every regulatory technicality, the limitations period should not have commenced and in fact should be extended indefinitely because he appears not, to this point, to have requested a right to sue letter. Such a result is not consistent with the logic or the tenor of the caselaw cited above: Mr. Burchett received fair notice, and both he and the attorney he was consulting understood him to have received a right-to-sue letter in the form of the September 23, 2002 Letter from the EEOC. Mr. Burchett cannot fairly reverse course now from his prior, repeated and consistent representations about the nature and effect of the September 23, 2002 Letter.

Finally, permitting a plaintiff to extend the ninety-day period indefinitely also runs contrary to the Seventh Circuit's teachings on the social purpose that limitations periods serve.

45

*See, e.g., Elmore*, 227 F.3d at 1013 ("We have emphasized in previous cases the social importance of limitations periods for suing.") (collecting cases); *id.* (re-emphasizing the importance of limitations periods and stating that "[s]uch deadlines minimize legal uncertainty both about the outcome of eventual litigation and about the existence and scope of the potential defendant's liability."). For all the foregoing reasons, the Court concludes that the unrefuted evidence shows that the September 23, 2002 Letter gave Mr. Burchett clear and actual knowledge of the EEOC's decision and of the commencement of the statutory period. Consequently, the Court finds that the 90-day period for filing a civil action began as of Mr. Burchett's receipt of the September 23, 2002 Letter.

        2. Equitable Tolling Does Not Save The Second And Operative Complaint

Because the present matter was filed on February 21, 2003, five months after the September 23, 2002 Letter was received, the case (*i.e.*, Case No. 03 C 1325) would appear to be time-barred unless the applicable 90-day statutory period was equitably tolled. As previously discussed, precedent directs that the statutory period should not be tolled for the time period that Case No. 02 C 9070 was pending before Judge Kocoras or after entry of his final judgment of dismissal. *See Elmore*, 227 F.3d at 1011 (collecting cases) and discussion above.

Mr. Burchett makes an open-ended argument asserting that his case warrants equitable tolling of the statutory period, and he sets forth a number of factors that he claims support application of the doctrine. (D.E. 42 at 13-16.) Respectfully, the Court is unpersuaded that these factors, or more generally the equities in this case, entitle Mr. Burchett to the benefit of equitable tolling.

Equitable tolling is the "judge-made doctrine, well-established in federal common law, that excuses a timely filing when the plaintiff could not, despite the exercise of reasonable diligence, have discovered all the information he needed in order to be able to file his claim on time." *Taliani v. Chrans*, 189 F.3d 597 (7th Cir. 1999) (collecting authorities); *accord, e.g., Elmore*, 227 F.3d at 1013 ("The running of a statute of limitations can be equitably tolled when through no fault of his own the plaintiff was unable to sue within the limitations period but he sued as soon as he could.") (collecting authorities). The case law stresses that the plaintiff must have exercised "continuous diligence and brought the suit as soon as it was practicable." *Chapple v. Nat'l Starch & Chem. Co. & Oil*, 178 F.3d 501, 506 (7th Cir. 1999) (collecting Seventh Circuit precedent); *accord, e.g., Arroyo v. Henderson*, No. 98 C 0443, 1999 WL 446700, at *5 (N.D. Ill. June 23, 1999) (Schenkier, M.J.) (concluding that plaintiff's lack of diligence prevented the court from even considering the application of equitable tolling). Precedent also "teaches that equitable tolling 'is granted sparingly.'" *Trejo v. Village of Itasca*, No. 02 C 1193, 2004 WL 2608285, at *9 (N.D. Ill. Nov. 16, 2004) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)); *accord, e.g., Chico-Velez v. Roche Prods., Inc.*, 139 F.3d 56, 58-59 (1st Cir. 1998) (stating that "[f]ederal courts should not apply equitable tolling liberally [simply] to extend time limitations in discrimination cases" and that the doctrine is only appropriate in "exceptional cases") (collecting cases).

Mr. Burchett's first problem in asserting equitable tolling, with all respect, is that he had enough information to file his claim on time, as shown by the fact that he brought suit within the 90-day window, consistent with his understanding of his obligations and the attorney advice he received, via Case No. 02 C 9070 before Chief Judge Kocoras. After Chief Judge Kocoras

entered judgment, rather than immediately appealing that judgment or moving to vacate and to file an amended complaint (the course expressly suggested by attorney LeVert), Mr. Burchett waited nearly two months before he filed the present suit.

In this regard, Mr. Burchett's procedural posture resembles that of the plaintiff in *Elmore*, where the plaintiff filed suit within the limitations period, his case (allegedly) was erroneously dismissed without prejudice, and then the statute of limitations ran before he refiled his suit. *Id.*, 227 F.3d at 1013. *Elmore* concluded that equitable tolling should not be a remedy in such situations, where the plaintiff's contention is not that he lacked adequate information to sue within the limitations period, but instead that his first, timely suit was erroneously dismissed. *Id.* Mr. Burchett did not pursue an appeal or a motion to vacate the earlier final judgment, and precedent instructs that equitable tolling should not be employed to permit him to collaterally attack the judgment in Case No. 02 C 9070. *See id.; accord, e.g., Chico-Velez*, 139 F.3d at 59 (where the plaintiff's initial discrimination suit was dismissed, and his refiled complaint was time-barred, the First Circuit concluded that equitable tolling did not apply to the refiled action and any error in the district court's dismissal of the initial action "has ripened into a final judgment and may not be collaterally attacked in this proceeding."); *see also id.* ("[A] prescriptive period is not tolled by filing a complaint that is subsequently dismissed without prejudice.") (collecting numerous appellate cases); *see generally Fed. Election Comm'n v. Al Salvi for Senate Committee*, 205 F.3d 1015, 1020 (7th Cir. 2000) (affirming dismissal of second action on the basis of *res judicata*, and characterizing the party's conduct in filing the second action and subsequently appealing the dismissal as "an impermissible collateral attack on the first judgment.").

Mr. Burchett's equitable tolling argument also falls short on the second key requirement—*i.e.*, a showing of continuous diligence. It is difficult to see how equitable tolling can fairly be invoked, given that the evidence shows that Mr. Burchett did not follow the advice of counsel and so "omit[ted] ordinary precautions." *Arroyo*, 1999 WL 446700, at \*5 (internal quotation marks and citation omitted). More specifically, attorney LeVert reviewed Judge Kocoras's final judgment and advised Mr. Burchett to file a "Motion to Vacate the Final Judgement and for Leave to File an Amended Complaint." (Pl. Resp. ¶ 31.) Mr. Burchett did not file such a motion, and instead filed the Second Complaint on February 21, 2003. (*Id.* ¶ 32.) Second, and independent of Mr. Burchett's failure to follow the procedural path laid out by attorney LeVert, Mr. Burchett delayed nearly two months after the entry of judgment in Case No. 02 C 9070 before filing the Second Complaint—that is, nearly two months further into the presumptive time limit that already had been triggered by the end of calendar year 2002. Mr. Burchett has offered no explanation for this delay, and accordingly he has failed to show that he "exercised continuous diligence and brought the suit as soon as it was practicable." *Chapple*, 178 F.3d at 506. Such a delay independently is disabling with respect to equitable tolling analysis. *Accord, e.g., Elmore*, 227 F.3d at 1013 (concluding that the plaintiff "could not possibly invoke the doctrine of equitable tolling unless he sued just as soon as possible after the judge's action made him realize that the statute of limitations had run. He waited four months to sue and has offered no excuse for the delay. Since all he had to do was refile the original complaint, merely deleting reference to his co-plaintiff's claims, it is not surprising that he is unable to come up with an excuse."); *Taliani*, 189 F.3d at 598 (mistake by attorney not basis for

49

equitable tolling); *Brown*, 318 F. Supp. 2d at 699 (explaining that *pro se* status alone does not establish any entitlement to equitable tolling).

As previously noted, Mr. Burchett asserts that because that the September 23, 2002 Letter did not fully comply with 29 C.F.R. §1601.28(e), equitable tolling should apply. Mr. Burchett's argument could potentially be well taken, for example, if the Court concluded that the September 23, 2002 Letter omitted crucial information and so left Mr. Burchett without "all the information he needed in order to be able to file his claim on time." *Taliani*, 189 F.3d at 597. However, as was discussed at length above, the Court has concluded that the September 23, 2002 Letter contained the information vital to Mr. Burchett's claim, so equitable tolling is not warranted on this basis. *See, e.g.*, *Davis*, 113 F. Supp. 2d at 1228 n.4 (rejecting plaintiff's argument that equitable tolling should apply because she did not receive a "right-to-sue" letter, on the grounds that "no right-to-sue letter was required. The decision by the EEOC clearly stated the time in which plaintiff had to file her suit . . . ."). Here, Mr. Burchett understood that the September 23, 2002 Letter from the EEOC was a right to sue letter, and Mr. Burchett has represented repeatedly to the district court that it *was* his right-to-sue letter, including in his First and Second Complaints.

The Court also notes that, to the extent generalized equitable considerations are relevant to the equitable tolling analysis, Mr. Burchett, unlike many *pro se* litigants, at a minimum had access to legal advice before and during the time he was proceeding in Case No. 02 C 9070 and Case No. 03 C 1325. During that time, Mr. Burchett told attorney LeVert that he received a right-to-sue letter (*i.e.*, the September 23, 2002 Letter) and attorney LeVert informed Mr. Burchett, seemingly fully correctly, about the applicable deadlines. (Pl. Resp. ¶ 26.) Similarly,

after Chief Judge Kocoras entered his final judgment in Case No. 02 C 9070, attorney LeVert reviewed that final judgment and advised Mr. Burchett to file a "Motion to Vacate the Final Judgement and for Leave to File an Amended Complaint." (*Id.* ¶ 31.) Mr. Burchett did not do so, for whatever reason. This is not, with all respect, the sort of evidentiary context in which an absolution from otherwise applicable rules seems equitable or warranted. This conclusion is reinforced, although this factor is certainly not outcome determinative, by the fact that Mr. Burchett later, after filing the Second Complaint and having it also dismissed by Judge Leinenweber, incorrectly represented in subsequent motions that he was filing *pro se*, when in fact those motions were prepared by counsel. (*See* Pl. Resp. ¶¶ 37-40.) This consideration is not outcome-determinative by any means, but it simply serves to reinforce that an equitable exemption is inappropriate, over and above the other reasons discussed above, including Mr. Burchett's lack of diligence as required to qualify for an equitable tolling exemption. *See, e.g., Elmore*, 227 F.3d at 1013 (finding a four-month delay inconsistent with application of equitable tolling).

In summary, the Court concurs with the Government that Mr. Burchett had actual notice of his right to sue as of his receipt of the September 23, 2002 Letter from EEOC. The Court also agrees with the Government that the Second Complaint, which is at issue here given Chief Judge Kocoras's final (and unappealed) judgment of dismissal, was not filed until February 21, 2003, two months after the 90-day limitations period had expired. Furthermore, equitable tolling of the limitations period is not warranted in the present matter, for all of the reasons explained above. Accordingly, the Court concludes that the Defendant is entitled to summary judgment because Mr. Burchett's suit in this action is time-barred.

## CONCLUSION

For the foregoing reasons independent reasons, the Court grants the Government's summary judgment motion. (D.E. 36.) The Court accepts the reasoning of the EEOC-OFO finding that Plaintiff conditionally waived his ability to proceed in this case in his settlement agreements, and that he failed to follow necessary preconditions before proceeding because he did not exhaust specified administrative remedies. The Court also finds that dismissal is independently warranted because Mr. Burchett's suit is untimely and that equitable tolling is inappropriate, for all of the reasons explained above.

So ordered

_Mark Filip_
Mark Filip
United States District Judge
Northern District of Illinois

Date: _9/26/06_